PER CURIAM. The record contains exceptions which we think require a reversal of the judgment. The defendant should have been permitted to show that the plaintiff was working at his own trade, independently of any employment by the defendant's testator, during the time that he claims to have been employed by said testator. The defendant should also have been permitted to show that after the rendition of the services sued for other services were performed and a bill rendered for the same which did not include any charge for the services sued for. No objection was made to the testimony offered on this head on the ground that the bill was the best evidence, but the objection was made on the ground that the testimony was irrelevant and immaterial. An objection that the bill itself was the best evidence might have been obviated by the production of the bill.

Judgment and order reversed, and new trial granted; costs to abide the event.

(121 App. Div. 604.)

PEOPLE'S TRUST CO. v. SCHENCK.

(Supreme Court, Appellate Division, Second Department. October 4, 1907.)

1. MORTGAGES—FORECLOSURE JUDGMENT—QUESTIONS RESERVED—PRIORITY OF LIENS—DETERMINATION—SCOPE OF INQUIRY.

Where a judgment of foreclosure reserves for further adjudication a question as to the priority of the lien of the mortgage over a judgment held by a defendant, the question is open for decision even so far as it involves a question of fact; although the judgment holder did not answer, since the reservation in the judgment obviated the necessity of a formal answer.

2. SAME—PROPERTY WHICH MAY BE MORTGAGED—AFTER-ACQUIRED PROPERTY.

After-acquired property may be mortgaged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, § 15.]

3. SAME—CONSTRUCTION—PROPERTY COVERED.

A mortgage covered all property thereafter to be acquired by a railroad company in connection with the railroad, or necessary or convenient to its operation, use, and enjoyment. The company owned upland on a beach, upon which its tracks were laid, and upon which it had a dock and terminal facilities and conducted a shore resort, at the time of the mortgage. Afterwards the company acquired adjacent land under water for the development of the resort and to exclude objectionable features from its immediate vicinity. Held, that the lands under water were so related to the upland and its improvements as to fall within the description in the mortgage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, §§ 255, 256.]

4. SAME—LIEN AND PRIORITY—SUBSEQUENT JUDGMENT.

A mortgage on after-acquired property attaches as soon as the property is acquired, and creates a lien superior to a subsequent judgment against the mortgagor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, §§ 307–309.]

Appeal from Special Term, Kings County.

Action by the People's Trust Company, as trustee, against Louis R. Schenck, executor, impleaded with the Brooklyn & Rockaway Beach Railroad Company and others. Judgment for plaintiff, and de-

fendant Schenck appeals.  Affirmed, upon the opinion of the court below.

The following is the opinion of Sutherland, J., in the trial court:

In the judgment foreclosing the mortgage described in the complaint a question was reserved for further adjudication whether the lien of the judgment recovered by the defendant Louis R. Schenck, as executor of the will of Johanna Schenck, deceased, against the mortgagor, the Brooklyn & Rockaway Beach Railroad Company, after the mortgage was made, is superior to the right, interest, or lien of the plaintiff under said mortgage upon lands under water adjacent to the shore of Jamaica Bay, acquired by the mortgagor after the mortgage was given and before the judgment was recovered.  The mortgage in question was made April 28, 1891.  The lands under water were acquired by the company from the state in October, 1894, and September, 1897. The Schenck judgment was recovered and docketed May 12, 1899.  The mortgage purports to cover all property owned by said railroad company at the time of said mortgage, or thereafter to be acquired by said company in connection with the railroad described therein, together with all improvements or additions to be made to any of said property, "and also all and every other estate, interest, property, or thing which the said party of the first part [the mortgagor] owns and holds, or may and shall hereafter acquire and hold, necessary or convenient for the use, occupation, operation, and enjoyment of said railroads hereinabove described, or any of them, leases and property rights, privileges, franchises, or any part or portion thereof."  The railroad in question was owned and operated by said company from the junction of Broadway and Vesta avenue in the city of Brooklyn to the shore of Jamaica Bay in the town of Flatland, at what is called "Canarsie Point," where docks were owned and maintained and a ferry operated by said company between its shore terminal and Rockaway Beach.  The ferryboats, franchise, etc., were included in the mortgage.  At the shore terminal, when the mortgage was made, the company owned a considerable tract of land, upon which it maintained the usual turnouts, switches, sidings, depots, etc., with pavilions and various accessories for attracting and amusing the patrons of the road; and the company's land extended along the shore of the bay for some distance northerly from the termination of the track at the ferry dock, to the mouth of Canoe creek, so called, where the shore line bends at an acute angle to the southeast.  The shore east of Canoe creek is owned by the company for several hundred feet, and within the angle formed by the shore are the 29 acres of land under water in dispute here.

Not all of the land owned by the company at that point was in actual use for railroad purposes when the mortgage was made, nor has it all been so used since; but it was so situated as undoubtedly to make it advantageous for the company to own and control said land, in order that the development of the shore resort might be promoted, so as to increase the patronage of the road and exclude such features in the immediate surroundings as would prove objectionable to the patrons.  It has not been contended that the upland was not all subject to the lien of the mortgage, although said upland is not described by metes and bounds, but in general terms.  The contest is confined here to the lands under water, which were acquired after the mortgage was made, and which the judgment creditor insists are not so related to the road itself, either in its present status or future development, as to be fairly included within the terms of the mortgage in respect to after-acquired property "necessary or convenient for the use, occupation, operation, and enjoyment of said railroad," or "acquired in connection therewith."  I regard the matter as open for decision now, even so far as it involves a question of fact, although the judgment creditor, Schenck, did not serve an answer in the case; the clause in the judgment reserving this matter for further adjudication being sufficient in my opinion to do away with the necessity of a formal answer.  It is clear that the lands under water in controversy here, if not necessary for the proper operation of the road, are, and were when acquired from the state, a desirable addition to the upland properties already owned by said road.  If a severance of proprietorship of upland and land

under water were to be made, and the land under water should come into the hands of interests hostile to that of the road, it is easy to see that the value and utility of the upland estate might be greatly diminished; and while it would be difficult to find as a fact, from the evidence here, that all of the upland and adjacent land under water is strictly necessary for the operation of the road as such, yet the properties at the time of the foreclosure constituted one entire terminal tract, which could be used in the interest of the road, if sufficiently developed, for amusement purposes, and, if any portion were to be disposed of for other purposes, such disposition should be controlled by friendly interests, if the welfare of the road itself is to be considered as of the greatest weight.

These considerations are important as bearing upon the probable intention of the parties to treat the property as a unit so far as the mortgage is concerned. The question of power to mortgage after-acquired property is not open to debate. It is settled indisputably. Stevens v. Watson, 4 Abb. Dec. (N. Y.) 302. The point for adjudication here is: Was the land under water so related to the upland and to the docks and terminal utilities of the road as to fall within the class of after-acquired property which the language of the mortgage shows it was the intention of the parties to subject to the lien thereof? New Orleans Pac. Ry. v. Parker, 143 U. S. 42, 12 Sup. Ct. 364, 36 L. Ed. 66; Jones on Corporate Bonds and Mortgages, §§ 94, 95, 103. And under the rule laid down in Archibald v. N. Y. C. & H. R. R. R. Co., 157 N. Y. 574, 52 N. E. 567, that lands under water owned by a mortgagor at the time of the execution of the mortgage, but not specifically described therein, will pass as an appurtenant to the adjacent upland described in the mortgage, it seems clear that the lien of the mortgage held by the plaintiff attached to the lands under water in the case at bar as soon as said lands were acquired by the railroad company, and that the lien of the Schenck judgment is inferior thereto; and it is so found and determined.

Accordingly an order may be made directing the payment to the plaintiff of the amount set aside to await the decision of this question.

Argued before HIRSCHBERG, P. J., and HOOKER, GAYNOR, RICH, and MILLER, JJ.

Rufus O. Catlin and Thomas E. Pearsall, for appellant.
Wingate & Cullen, for appellee trust company.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Mr. Justice Sutherland at Special Term.

---

### MALLER v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. November 22, 1907.)

EVIDENCE—DECLARATIONS OF AGENT—RES GESTÆ.

In an action to recover for a carrier's nondelivery of goods, plaintiff's testimony that the carrier's agent said he would send out a tracer after the goods, and that after several other inquiries by plaintiff the agent said, "No use losing more time, the goods are lost," was admissible, as the agent was the proper person of whom to make inquiries, and had authority to arrange with plaintiff for tracing the goods, and his statements constituted a part of the res gestæ.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 351–368.]

Appeal from Municipal Court, Borough of Brooklyn, Third District.
Action by Osias Maller against the Long Island Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.